

23-7296-cv (L)
*Rossy v. City of Buffalo*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 14th day of March, two thousand twenty-five.

PRESENT:
        JOHN M. WALKER, JR.,
        JOSEPH F. BIANCO,
        BETH ROBINSON,
            *Circuit Judges*.

_____

MARGARITA ROSSY, as Administrator of the Estate of Jose Hernandez-Rossy,

    *Plaintiff-Appellee-Cross-Appellant*,

v.                            23-7296-cv (L);
                               23-7368-cv (XAP)

CITY OF BUFFALO, AND ITS AGENTS, SERVANTS AND EMPLOYEES, JUSTIN TEDESCO, BUFFALO POLICE DEPARTMENT P.O., JOSEPH ACQUINO, BUFFALO POLICE DEPARTMENT P.O., POLICE COMMISSIONER DANIEL DERENDA, Individually and in their representative capacities,

    *Defendants-Appellants-Cross-Appellees*,

AMERICAN MEDICAL RESPONSE, AND ITS
AGENTS, SERVANTS AND EMPLOYEES DBA
AMR,

                *Defendant*.

_____

| | |
|---|---|
| FOR DEFENDANTS-APPELLANTS-CROSS-APPELLEES: | ROBERT E. QUINN, Assistant Corporation Counsel, *for* Cavette A. Chambers, Corporation Counsel, City of Buffalo, Department of Law, Buffalo, New York. |
| FOR PLAINTIFF-APPELLEE-CROSS-APPELLANT: | NELSON S. TORRE, ESQ., Law Office of Nelson S. Torre, Buffalo, New York. |

Appeal from an order of the United States District Court for the Western District of New York (William M. Skretny, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the district court, entered on September 5, 2023, is **VACATED** in part, the Plaintiffs' Cross-Appeal is **DISMISSED** in part for lack of jurisdiction, and the City Defendants' Appeal is **DISMISSED** for lack of jurisdiction, as set forth below, and the case is **REMANDED** for further proceedings consistent with this order.

Defendants-Appellants-Cross-Appellees the City of Buffalo (the "City"), Buffalo Police Officers Justin Tedesco and Joseph Acquino, and Buffalo Police Commissioner Daniel Derenda (collectively, the "City Defendants") appeal from the district court's partial denial of their motion for summary judgment under Federal Rule of Civil Procedure 56(a). Specifically, the City Defendants challenge the district court's determination that, at this stage, Tedesco and Acquino are not entitled to qualified immunity for the Fourth and Fourteenth Amendment claims asserted against them pursuant to 42 U.S.C. § 1983. Additionally, Plaintiff-Appellee-Cross-Appellant Margarita Rossy ("Plaintiff"), as the administrator of the estate of decedent Jose

Hernandez-Rossy ("Hernandez-Rossy"), cross-appeals from the district court's determination that she did not assert individual capacity claims under Section 1983, as well as its partial grant of summary judgment in favor of the City Defendants with respect to her claim for punitive damages and her state law claims for official misconduct, tampering, and spoliation. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision.

## BACKGROUND

The parties do not contest that on May 7, 2017, Buffalo police officer Justin Tedesco shot and killed Jose Hernandez-Rossy. Officer Tedesco and his fellow Buffalo police officer Joseph Acquino were in their patrol car when they first encountered Hernandez-Rossy's vehicle and pulled it over. During the stop and while Hernandez-Rossy was in the driver's seat, Acquino entered the vehicle through the driver's side window and the vehicle accelerated, hitting the officers' patrol car and crashing into a nearby house. When Acquino emerged from the vehicle, his right ear was torn. The officers then removed Hernandez-Rossy from his car and struggled with him on the ground. At some point during the encounter, Hernandez-Rossy broke free and began running away. Tedesco then fired three shots at Hernandez-Rossy from behind, one of which struck the brachial artery in Hernandez-Rossy's left arm. Hernandez-Rossy collapsed a few blocks away and later died from exsanguination. There is no evidence that Hernandez-Rossy was armed.

Beyond these undisputed facts, the factual circumstances surrounding the shooting are vigorously contested by the parties. Plaintiff asserts, for instance, that Tedesco and Acquino only began following Hernandez-Rossy after recognizing him at an intersection with his window down, because Acquino had filed thirteen charges against Hernandez-Rossy three years earlier,

3

all of which were dismissed. Before notifying a police dispatcher, the officers purportedly followed the vehicle without using a siren and, after no more than three blocks, stopped the vehicle by driving on the wrong side of the road and cutting it off at a 45-degree angle, all of which allegedly violated the Buffalo Police Manual of Procedures. Although the officers claimed to have stopped the vehicle because they saw smoke and smelled marijuana, which purportedly led the officers to seize a "blunt" from Hernandez-Rossy, Plaintiff asserts that no evidence was produced to substantiate these allegations.

Moreover, Tedesco and Acquino's descriptions of how and why Acquino jumped through Hernandez-Rossy's window purportedly conflict in material ways. Based on those descriptions and other evidence, Plaintiff asserts that Acquino jumped onto Hernandez-Rossy's legs and groin, and thereby caused the vehicle to accelerate. Furthermore, although all parties agree that Acquino injured his ear in Hernandez-Rossy's vehicle, they assign different significance to that injury. Plaintiff points to evidence that Acquino's injury was caused by contact with the doorframe as he jumped into the vehicle. Plaintiff notes that no eyewitnesses observed Hernandez-Rossy with a weapon at any time and that forensic testing determined that no firearm was discharged in his vehicle.

After Hernandez-Rossy's car crashed, Acquino allegedly dragged Hernandez-Rossy out of his seat by his head and Tedesco began punching him. Tedesco also purportedly used a "leg scissors" hold on Hernandez-Rossy and "pistol whipped" him. According to the medical evidence, Hernandez-Rossy reportedly suffered more than seventy blunt force impact injuries and abrasions. Plaintiff contends that Hernandez-Rossy was in a defensive posture, did not use offensive violence against the officers or reach for their weapons, and was observed to be unarmed. Furthermore, Plaintiff notes that Hernandez-Rossy's shirt and jacket were pulled off

4

his body during the encounter, and therefore, Tedesco and Acquino could see that there were no weapons beneath.

According to Plaintiff, Acquino then purportedly began yelling, "Shoot him, shoot him" and told Tedesco, "Bro, f**king kill him!" Appellee's Br. at 16, 19. Shortly thereafter, as Hernandez-Rossy ran away, Tedesco assumed a shooter's stance and fired at Hernandez-Rossy from approximately 30 to 40 yards behind. Although the officers asserted that Tedesco shot Hernandez-Rossy because he believed Hernandez-Rossy had shot Acquino, causing his ear injury, Plaintiff relies, *inter alia*, on the statement of an eyewitness, who reported that Acquino never stated that he had been shot by Hernandez-Rossy until *after* Tedesco had already fired his service weapon. In addition, Plaintiff alleges that Tedesco did not notify a police dispatcher of the shooting as is required by the Buffalo Police Manual, and instead told the dispatcher that a car had taken off on the officers and crashed into a house. Moreover, Tedesco allegedly lied to dispatch during that call by stating that Hernandez-Rossy had taken off with Tedesco's firearm inside his vehicle.

The City Defendants present a different version of the facts. They assert that, after observing smoke and smelling marijuana, the officers activated their horn and lights, but Hernandez-Rossy did not stop driving, so the officers pulled in front of him to force a stop. Tedesco and Acquino then saw Hernandez-Rossy smoking a marijuana cigarette, an observation which they assert is supported by a later toxicology examination in which Hernandez-Rossy tested positive for Cannabinoids as well as Benzodiazepines and Oxycodone. Upon approaching the car, the officers began asking Hernandez-Rossy questions, to which he did not respond. Hernandez-Rossy then purportedly moved his hand toward the top right pocket of his jacket, and Acquino, believing he may be reaching for a weapon, leaned into the vehicle and allegedly felt

what he thought to be a "small caliber gun," causing Acquino to yell, "Gun! Gun!" App'x at 2897.

According to the City Defendants, Hernandez-Rossy then pulled Acquino into his vehicle, tried to close the driver's side door, which at some point had been opened, and accelerated with Acquino hanging out from the vehicle. While hanging from the vehicle, Acquino grabbed the steering wheel and turned the vehicle to narrowly avoid hitting a nearby child on his bicycle. When the vehicle subsequently crashed into the house, Acquino heard what he said sounded like loud fireworks in his ear and felt a burning sensation, at which point he exited the vehicle bleeding and with his ear partially or nearly detached. Acquino allegedly yelled to Tedesco, "Justin I'm shot," "Help me!," and "Shoot him." App'x at 2899. Additionally, at some point, a witness purportedly heard Acquino yell that he had been shot. *Id.*

According to the City Defendants, the officers wrestled Hernandez-Rossy out of the vehicle and tried to restrain him, but Hernandez-Rossy resisted. Shortly thereafter, Hernandez-Rossy broke free and began running away, at which point Tedesco pointed his gun at him and yelled "get down" or "stop" multiple times. Appellants' Br. at 18; App'x at 2900. When Hernandez-Rossy kept running, Tedesco opened fire. Around the time of the shooting, several witnesses contacted the police dispatcher and reported that they believed an officer had been shot. Subsequent investigations into the incident by the New York State Office of the Attorney General and the Buffalo Police Internal Affairs Department determined that, although the officers were mistaken in their belief that Acquino had been shot, they did not engage in any wrongdoing.

On September 19, 2017, Plaintiff initiated the instant action against the City, Tedesco and Acquino, Buffalo Police Commissioner Derenda, and emergency medical services provider

American Medical Response ("AMR"). The complaint alleged: (1) Tedesco and Acquino are liable under 42 U.S.C. § 1983 for violations of the Fourth, Eighth, and Fourteenth Amendments; (2) the defendants are liable under 42 U.S.C. § 1981 for violations of the Fourth, Eighth, and Fourteenth Amendments; (3) the City and Commissioner Derenda are subject to *Monell* liability under 42 U.S.C. § 1983; (4) the City and Commissioner Derenda are subject to supervisory liability under 42 U.S.C. §§ 1981 and 1983; (5) the City, Tedesco, Acquino, and AMR are liable for common law wrongful death; (6) the City, Tedesco, and Acquino are liable for common law negligence; and (7) the City is liable for official misconduct, tampering, and spoliation.

Following discovery, the parties cross-moved for summary judgment, and the City Defendants, in the alternative, moved for judgment on the pleadings. The district court granted summary judgment in the City Defendants' favor on all claims with one exception; as to the Section 1983 claims against Tedesco and Acquino, the district court denied summary judgment on qualified immunity grounds for the alleged Fourth and Fourteenth Amendment violations committed by the officers. *See generally Rossy v. City of Buffalo*, No. 17-CV-937S, 2023 WL 5725283 (W.D.N.Y. Sept. 5, 2023). The City Defendants now appeal that denial, arguing that there is no material factual dispute as to whether Tedesco and Acquino are entitled to qualified immunity. In turn, Plaintiff cross-appeals the district court's decision insofar as it found that Plaintiff had failed to assert any individual capacity Section 1983 claims and granted summary judgment as to the request for punitive damages and the claim against the City for official misconduct, tampering with evidence, and spoliation.[1]

---

[1] In a separate decision, the district court granted in part and denied in part AMR's motion for summary judgment on the claim against it for common law wrongful death, and denied Plaintiff's cross-motion for summary judgment on that claim. That decision is not challenged on appeal.

# DISCUSSION

"Ordinarily, the denial of summary judgment is not immediately appealable because such decision is not a final judgment." *Soto v. Gaudett*, 862 F.3d 148, 157 (2d Cir. 2017) (citing 28 U.S.C. § 1291). However, under the collateral order doctrine, "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). Accordingly, "we may review a denial of summary judgment based on qualified immunity on an interlocutory basis if it may be resolved on stipulated facts, or on the facts that the plaintiff alleges are true, or on the facts favorable to the plaintiff that the trial judge concluded the jury might find." *Washington v. Napolitano*, 29 F.4th 93, 103 (2d Cir. 2022) (internal quotation marks and citation omitted). However, "[i]f a factual determination is a necessary predicate to the resolution of whether immunity is a bar, review is postponed and we dismiss the appeal." *Brown v. Halpin*, 885 F.3d 111, 117 (2d Cir. 2018) (alteration adopted) (citation omitted). "Against this backdrop, we review *de novo* a district court's denial of a summary judgment motion based on a defense of qualified immunity." *Jones v. Parmley*, 465 F.3d 46, 55 (2d Cir. 2006).

When reviewing a qualified immunity determination, we may also "exercise pendent jurisdiction over issues that are not ordinarily subject to interlocutory review whenever (1) they are 'inextricably intertwined' with the determination of qualified immunity or (2) their resolution is 'necessary to ensure meaningful review' of the district court's ruling on qualified immunity." *Savino v. City of New York*, 331 F.3d 63, 71–72 (2d Cir. 2003) (quoting *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 51 (1995)). Pendent jurisdiction may be appropriate where, for instance, there is "substantial factual overlap bearing on the issues raised," *Toussie v. Powell*, 323 F.3d

178, 184 (2d Cir. 2003) (citation omitted), or where doing so "best serves the interests of judicial economy," *Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013).

Denials of summary judgment are reviewed *de novo*, "construing all evidence in the light most favorable to the non-moving party, drawing all reasonable inferences and resolving all ambiguities in [his] favor." *Id.* at 89 n.2 (internal quotation marks and citation omitted).

I.  **Plaintiff's Cross-Appeal**

As an initial matter, we must determine whether we may exercise pendent jurisdiction over claims Plaintiff raises in her cross-appeal. The City Defendants appeal the district court's denial of qualified immunity on Plaintiff's Section 1983 claims against Tedesco and Acquino, alleging that any disputed facts are not material to the immunity determination and the use of force did not violate clearly established law. In turn, Plaintiff cross-appeals, arguing, among other things, that the district court improperly concluded that the complaint failed to assert any individual capacity Section 1983 claims and erroneously applied the qualified immunity argument to the official capacity claims rather than individual capacity claims. Because the capacity in which a Section 1983 claim is brought affects the availability of qualified immunity, the cross-appeal issue raised by Plaintiff is inextricably intertwined with the qualified immunity analysis. Therefore, for the reasons discussed below, we conclude that this constitutes an exceptional circumstance warranting our exercise of pendent jurisdiction over the district court's determination that the complaint did not assert any individual capacity Section 1983 claims. We further hold that the district court's determination on that issue was erroneous.

"At the outset, this appeal requires us to distinguish between official and individual capacity suits." *Yorktown Med. Lab'y, Inc. v. Perales*, 948 F.2d 84, 87 (2d Cir. 1991). Because an official capacity suit against a government official "is, in all respects other than name, to be

treated as a suit against the [government] entity" itself, *Kentucky v. Graham*, 473 U.S. 159, 166 (1985), an official capacity suit "merge[s] into [the] claims against the [government entity]," *Quinones v. City of Binghamton*, 997 F.3d 461, 466 n.2 (2d Cir. 2021); *see also Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 n.55 (1978) (explaining that official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent"). Therefore, an official capacity suit "require[s] proof of a municipal policy or custom, whereas personal liability," which is sought through an individual capacity suit, "require[s] only that [the defendant] himself caused the deprivation of a federal right while acting under color of state law." *McCray v. Cnty. of Suffolk, N.Y.*, 598 F. App'x 48, 50 (2d Cir. 2015) (summary order); *see Graham*, 473 U.S. at 166–67.

A key distinction between official capacity and individual capacity Section 1983 claims is the availability of qualified immunity. "[B]ecause a claim asserted against a government official in his official capacity is essentially a claim against the governmental entity itself, the defense of qualified immunity, which may be available to individual defendants as they are sued in their individual capacities, is not applicable to claims against them in their official capacities." *Jackler v. Byrne*, 658 F.3d 225, 244 (2d Cir. 2011). In short, "with respect to an official-capacity claim, qualified immunity is simply not a defense." *Lore v. City of Syracuse*, 670 F.3d 127, 164 (2d Cir. 2012); *accord Soto v. Gaudett*, 862 F.3d 148, 162–63 (2d Cir. 2017). Thus, if the district court correctly determined that no individual capacity claims under Section 1983 had been asserted in the complaint, then its qualified immunity analysis could not apply to the official capacity Section 1983 claims and that analysis would have been completely unnecessary. In other words, the district court's denial of summary judgment on the Fourth and Fourteenth Amendment claims against Tedesco and Acquino on qualified immunity grounds is inconsistent

with its later determination that the complaint did not contain any individual capacity claims. In light of this discrepancy, and because we would not need to reach the appeal of the denial of qualified immunity in the absence of an individual capacity Section 1983 claim, we exercise pendent jurisdiction in order to first determine whether the district court properly concluded that Plaintiff did not assert individual capacity claims against Tedesco and Acquino.

"On the merits, to establish *personal* liability in a § 1983 action, it is enough to show that [an] official, acting under color of state law, caused the deprivation of a federal right." *Graham*, 473 U.S. at 166 (emphasis in original). The district court concluded that "Plaintiff sued the officers in only their official capacities as acting under the color of law, despite captioning the suit as against the officers 'Individually and in their representative capacities.'" *Rossy*, 2023 WL 5725283, at *17 (internal citation omitted). In reaching that conclusion, the district court erroneously suggested that the allegation that the officers acted "under the color of law" means that they could not have acted in their individual capacities. To the contrary, "[p]ersonal-capacity suits . . . seek to impose individual liability upon a government officer for actions taken *under color of state law*," *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (emphasis added), precisely because the "acts of officers in the ambit of their personal pursuits are plainly excluded" from Section 1983, *Screws v. United States*, 325 U.S. 91, 111 (1945).

Here, the complaint clearly "provided [Tedesco and Acquino] with sufficient notice of potential exposure to personal liability." *Yorktown*, 948 F.2d at 89. Not only did the complaint explicitly state that Plaintiff "sues all defendants in both their individual and official capacities," App'x at 108–09, it also sought punitive damages, "which are only available in individual capacity suits," *Yorktown*, 948 F.2d at 89, and it alleged facts sufficient to demonstrate that Tedesco and Acquino, "acting under color of state law, caused the deprivation of a federal right,"

11

*Kentucky*, 473 U.S. at 166.  Indeed, the district court determined that the "color of state law" requirement had been "met without dispute."  *Rossy*, 2023 WL 5725283, at \*6; *see Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) ("We have no doubt that when an officer identifies himself as a police officer and uses his service pistol, he acts under color of law.").  Moreover, Tedesco and Acquino never argued in the district court that they had not been sued in their individual capacity, and the fact that they moved for summary judgment on qualified immunity grounds, which only applies to individual capacity claims, confirmed that they were on notice of the individual capacity claims in the complaint.

In sum, the district court erred in concluding that Plaintiff failed to sue Tedesco and Acquino in their individual capacities.[2]  We thus turn to Tedesco and Acquino's argument that they were entitled to summary judgment on those individual capacity claims on the ground of qualified immunity and that the district court erred in concluding otherwise.

---

[2] As part of the cross-appeal, Plaintiff also argues the district court erred in holding that punitive damages are not recoverable.  The district court held that, because Tedesco and Acquino were only sued in their official capacities, they are immune from punitive damages.  *See, e.g., Ivani Contracting Corp. v. City of New York*, 103 F.3d 257, 262 (2d Cir. 1997).  However, because we conclude that Plaintiff also asserted individual capacity claims, the justification provided by the district court for granting summary judgment in favor of the City Defendants on the punitive damages issue is no longer applicable, as the immunity from a claim for punitive damages afforded to municipal employees in their official capacities "does not extend to a municipal official sued in his individual capacity."  *New Windsor Volunteer Ambulance Corps., Inc v. Meyers*, 442 F.3d 101, 122 (2d Cir. 2006).  We nevertheless decline to exercise pendent jurisdiction over this issue because the question is not inextricably intertwined with, or necessary for, our review of the district court's ruling on qualified immunity.  Our decision not to exercise pendent jurisdiction, however, does not preclude Plaintiff from seeking reconsideration of the punitive damages issue in the district court based on our ruling with respect to the individual capacity claims.  We similarly decline to review Plaintiff's cross-appeal of the district court's grant of summary judgment for the City on the official misconduct, tampering, and spoliation claims because its reasoning with respect to those claims was "entirely separate and distinct from the qualified immunity analysis."  *Parmley*, 465 F.3d at 65.

## II. Qualified Immunity

"A police officer is entitled to qualified immunity from liability for his discretionary actions if either (1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." *Cerrone v. Brown*, 246 F.3d 194, 199 (2d Cir. 2001) (internal quotation marks and citations omitted); *see Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The City Defendants argue the district court erred in denying qualified immunity because (1) "[t]he 'material' issues of fact identified by the [court] are not disputes which affect the outcome of the suit" and (2) Tedesco and Acquino's "actions were 'objectively reasonable' and did not violate 'clearly established law.[']" Appellants' Br. at 27. As set forth below, we conclude that we lack jurisdiction to review the denial of summary judgment on qualified immunity grounds based upon the disputed material issues of fact the district court identified in the record.

In determining whether an officer's use of force was objectively reasonable, we pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). An officer may not "employ[] a degree of force beyond that which is warranted by the objective circumstances," *Cugini v. City of New York*, 941 F.3d 604, 612 (2d Cir. 2019), and "[i]t is not objectively reasonable for an officer to use deadly force to apprehend a suspect unless the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others," *O'Bert ex rel. Est. of O'Bert v. Vargo*, 331 F.3d 29, 36 (2d Cir. 2003). "Given the fact-specific nature of

13

th[is] inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004).

Here, the district court found "numerous disputed issues of material fact" surrounding the use of lethal force, including whether "Hernandez-Rossy shot Officer Acquino—or [whether] Officer Tedesco reasonably believed that Hernandez-Rossy did so—" which was "ultimately the justification for Officer Tedesco's use of lethal force." *Rossy*, 2023 WL 5725283, at *9. The district court determined that these genuine factual disputes were material as to "whether it was objectively reasonable for the officers to believe that their actions did not violate Hernandez-Rossy's constitutional rights," and therefore, the court was precluded from affording qualified immunity to the officers at the summary judgment stage. *Id.*

The City Defendants argue that the evidence presented at summary judgment, even viewed in the light most favorable to Plaintiff, "does not actually raise a *genuine* question of fact as to whether Officer Tedesco believed that Acquino had been shot." Appellants Br. at 34 (emphasis added). However, "where the district court denied immunity on summary judgment because genuine issues of material fact remained, we have jurisdiction to determine whether the issue is *material*, but not whether it is *genuine*." *Bolmer v. Oliveira*, 594 F.3d 134, 140–41 (2010) (emphases in original); *see Terebesi v. Torreso*, 764 F.3d 217, 229 (2d Cir. 2014) (explaining that we may not review a denial of immunity that presents an unresolved factual dispute, such as when the parties dispute "what occurred, or why an action was taken" (internal quotation marks and citation omitted)). We have emphasized that the scope of our review is limited to materiality because weighing "disputed material issues regarding the reasonableness

14

of an officer's perception of the facts (whether mistaken or not) is the province of the jury[.]" *Jones v. Treubig*, 963 F.3d 214, 231 (2d Cir. 2020); *see also Green v. City of New York*, 465 F.3d 65, 83 (2d Cir. 2006). We conclude that Tedesco's perception of the cause of Acquino's injury is material to the qualified immunity determination because it speaks to "[w]hether in the particular circumstances faced by [Tedesco], a reasonable officer would believe that the force employed was lawful." *Cowan ex rel. Est. of Cooper v. Breen*, 352 F.3d 756, 764 n.7 (2d Cir. 2003). That disputed factual issue, in combination with the other disputed facts surrounding the cause for the vehicle's acceleration and the nature of the subsequent physical encounter with the police, as well as the officers' reasonable beliefs regarding those facts, are critical to determining whether the officers are entitled to qualified immunity. Under such circumstances, we lack jurisdiction to review the district court's denial of summary judgment.

      \*      \*      \*

We have considered the parties' remaining arguments and find them to be without merit. Accordingly, the district court's order is **VACATED** in part and the Plaintiffs' Cross-Appeal is **DISMISSED** in part for lack of jurisdiction, as set forth above, and the City Defendants' Appeal is **DISMISSED** for lack of jurisdiction. The case is **REMANDED** for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court



A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit